IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 15-cv-02821-PAB-STV

THOMAS ARAGON, on behalf of himself and all similarly situated persons,

    Plaintiff,

v.

CLEAR WATER PRODUCTS LLC,
MILLS SOLIDS CONTROL CONSULTING, LLC,
AQUA CLEAR SOLUTIONS LLC,
BRODY HANSEN,
SCOTT FORKNER,
WAYNE JEFFREY HUBBARD,
JAY GARRETT MILLS, and
DANIELLE MILLS,

    Defendants.

---

# ORDER

---

This matter comes before the Court on the Joint Motion for Final Approval of Settlement Agreement [Docket No. 110] and plaintiff's Unopposed Motion for Approval of Attorney's Fees and Costs [Docket No. 109]. The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

This case arises out of a wage dispute. Plaintiff, a solids control technician, claims that he and other similarly situated employees of defendants were not paid full compensation for overtime hours worked and were instead paid a "day rate with no overtime premium pay." Docket No. 1 at 4, ¶ 9. Plaintiff also alleges that he was not paid for all his hours worked and rest breaks as mandated by Colorado law. *Id*.

Plaintiff filed a class action complaint on December 28, 2015. Docket No. 1. Plaintiff asserts claims for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101, *et seq.*, the Colorado Minimum Wage Act, Colo. Rev. Stat. § 8-6-101, *et seq.*, and breach of contract. *Id*. at 6-9, ¶¶ 14-37. On May 5, 2017, the parties filed a joint motion for preliminary approval of a class action settlement. Docket No. 103. The Court granted the motion on March 5, 2018 and approved the parties' plan to disseminate notice of the settlement to class members. Docket No. 106. On May 14, 2018, plaintiff filed a motion requesting an award of attorney's fees and costs. Docket No. 109. On June 28, 2018, the parties moved for final approval of the class action settlement. Docket No. 110. The Court held a final fairness hearing regarding the proposed settlement on December 13, 2018. Docket No. 114.

## II. FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A. Overview of the Settlement Agreement

The proposed settlement agreement defines the settlement class as:

all persons who worked for Clear Water as solids control technicians and were paid a day rate at any time from December 28, 2013 through the date that the Court enters an order preliminarily approving this Agreement.

Docket No. 103-3 at 1, ¶ II.A. Under the proposed settlement agreement, defendants agree to pay a total of $350,000.00 as well as the settlement administrator's fees. *Id*. at 6, ¶ IV.E.1. The settlement funds are to be distributed as follows: (1) service awards of $7,000.00 to plaintiff and $2,750.00 each to opt-in plaintiffs Michael Aragon, Raymond Romero, Kevin Shay, and David Yoho, *id.*, ¶ IV.E.3; (2) payments to class counsel of up

to $116,666.00 for attorneys' fees and costs, *id*., ¶ IV.E.2; (3) payment of class members' payroll taxes, *id*. at 7, ¶ IV.E.4; and (4) pro rata payments to settlement class members of all remaining funds based on the number of weeks they were paid a day rate since December 28, 2013. *Id*., ¶ IV.E.7.

### B. Notice to the Settlement Class

Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) provides, in relevant part, that for "any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition to the requirements of Rule 23, the Due Process Clause also guarantees unnamed class members the right to notice of a settlement. *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005). However, due process does not require that each class member receive actual notice to be bound by the adjudication of a representative action. *Id*. Instead, the procedural rights of absent class members are satisfied so long as "the best notice practicable under the circumstances [is given] including individual notice to all members who can be identified through reasonable effort." *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1110 (10th Cir. 2001) (citation omitted). Thus, "[t]he legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are coextensive and substantially similar." *DeJulius*, 429 F.3d at 944.

The Court finds that the parties complied with the notice plan that was approved by this Court in its ruling on the parties' motion for preliminary approval of the class action settlement. See Docket No. 106 at 16-18. The settlement administrator mailed a notice of preliminary approval to each of the eighty-nine settlement class members. Docket No. 110-2 at 2, ¶ 6. The settlement administrator also emailed notice of the settlement to eighty-six class members. *Id*. One class notice was returned to the settlement administrator and was undeliverable upon remailing of the notice. *Id*. at ¶ 7.

Consistent with its prior order, the Court finds that the parties made reasonable efforts to identify and provide notice to all class members who would be bound by the settlement. See Fed. R. Civ. P. 23(e)(1) (requiring court to "direct notice in a reasonable member to all class members who would be bound by the proposal"); *Tennille v. W. Union Co.*, 785 F.3d 422, 438-39 (10th Cir. 2015) (finding that mailing of settlement notice to addresses updated through post office's change-of-address database was sufficient under Rule 23 and due process*)*; *DeJulius*, 429 F.3d at 944 (noting that due process inquiry "focuses upon whether the district court gave the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort" (internal quotation marks omitted)). Moreover, the notice itself contained information regarding the nature of the lawsuit, the definition of the class, class members' anticipated recovery under the settlement, the amount of attorneys' fees and costs sought, and a summary of the class members' legal rights, including the right to object or exclude themselves from the settlement. See Docket No. 110-3; *see also* Fed. R. Civ. P. 23(c)(2)(B) (describing information to

be included in notice). The notice also directed class members to a toll-free number for additional information regarding the settlement. *See* Docket No. 110-3 at 4; *see also Tennille*, 785 F.3d at 437 (finding that "notice satisfied due process by informing class members of several ways they could obtain information about the claims that they would be releasing if they joined the settlement").

Based on the foregoing, the Court is satisfied that the notice provided to class members met the requirements of Rule 23(e) and Due Process.

### C. Analysis of Rule 23 Factors[1]

Rule 23(e) provides that a proposed settlement may only be approved after a "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In this process, "trial judges bear the important responsibility of protecting absent class members," and must be "assur[ed] that the settlement represents adequate compensation for the release of the class claims." *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (noting that the Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise") (citations omitted). To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors: "(1) whether the proposed settlement was fairly and honestly negotiated; (2)

---

[1] This Court previously found that certification of the proposed class was appropriate for purposes of the parties' settlement. Docket No. 106 at 14. The Court incorporates that finding herein.

5

whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). If the settling parties can establish these factors, courts usually presume that the proposed settlement is fair and reasonable. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (applying an "initial presumption of fairness" to a proposed settlement where: (1) it was the result of arm's length negotiations; (2) it was based on sufficient discovery; (3) "the proponents of the settlement [were] experienced in similar litigation; and (4) only a small fraction of the class objected").

With regard to the first factor, the Court finds no evidence of collusion. This case has been pending for nearly three years, during which time the parties have briefed several motions and engaged in formal discovery, including written discovery and depositions. *See* Docket No. 110 at 7; Docket No. 79 (plaintiff's motion for class certification); Docket No. 80 (plaintiff's motion to approve *Hoffman-LaRoche* notice). The parties also engaged in informal discovery, which indicated that any substantial recovery won by plaintiff could lead to defendants' bankruptcy. *See* Docket No. 110 at 7. Based on the information provided, the Court is satisfied that the parties' settlement is the product of fair and honest negotiations between the parties. *See Reiskin v. Reg'l Transp. Dist. Colo.*, No. 14-cv-03111-CMA-KLM, 2017 WL 5990103, at *2 (D. Colo. July 11, 2017) (finding that class settlement was fairly and honestly negotiated where "case

6

involved intensive discovery," "expert witness reports," depositions, and "[n]umerous motions").

The Court also finds that there are serious questions of law and fact in this case that likely would have affected plaintiffs' chance at recovery. Defendants represent that they believe that many of the class members are subject to the Motor Carrier Act exemption to the FLSA, 29 U.S.C. § 213(b)(1). See Docket No. 110 at 8-9. The parties also dispute several issues related to damages, such as which statute of limitations applies and to what extent the Motor Carrier Act exemption applies. Id. Finally, the financial information disclosed by defendants during discovery indicated that defendants would not have been able to pay a large lump sum judgment, possibly leading to minimal recovery by the class members. Id. at 7. Given the real prospect that plaintiffs would not have obtained any recovery had the case proceeded to trial, the Court finds that this factor weighs in favor of approving the parties' settlement agreement.

The Court next considers whether the value of immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. The parties indicate that continued litigation would lead to additional discovery, extensive motions practice, trial, and an appeal. See Docket No. 110 at 9-10. Under the parties' settlement agreement, class members will receive a pro rata share of $350,000, less attorney's fees and other adjustments. See Docket No. 110-1 at 6-7, ¶¶ 1-7. Given the risks and costs of protracted litigation and uncertainty surrounding class members' ability to recover on a lump sum judgment, the Court finds that the immediate recovery provided for in the parties' settlement agreement outweighs the possibility of greater

7

future relief.

The fourth factor also weighs in favor of final approval of the parties' settlement. "Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Hapka v. CareCentrix, Inc.*, 2018 WL 1871449, at *5 (D. Kan. Feb. 15, 2018) (quoting *Lucas*, 234 F.R.D. at 695). Here, class counsel has extensive experience representing plaintiffs in wage and hour law cases and in class actions. *See* Docket No. 109-1 at 2, 4-5, ¶¶ 3, 10-11. In their joint motion, counsel for both sides state that they "fully support the [s]ettlement [a]greement" and that it is "fair, reasonable, and adequate." *See* Docket No. 110 at 10-11.

Finally, no class members requested exclusion from the settlement or objected to the settlement. *See* Docket No. 110 at 5. Class members' apparently positive response to the settlement is further evidence that it is fair, adequate, and reasonable. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (noting that the fact that "only a small number of objections are received . . . can be viewed as indicative of the adequacy of the settlement" (internal quotation marks omitted)).

Based on the foregoing, the Court concludes that the settlement is "fair, reasonable, and adequate," and will grant final approval of the settlement agreement.

### III. ATTORNEY'S FEE AWARD

Class counsel request an award of attorney's fees and costs in the amount of $116,666, which is between 32% and 33% of the total settlement amount. *See* Docket No. 109 at 1. The FLSA entitles a prevailing plaintiff to recover "a reasonable attorney's fee . . . and costs of the action." *Gray v. Phillips Petroleum Co.*, 971 F.2d 591, 594

(10th Cir. 1992) (quoting 29 U.S.C. § 216(b)). "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (internal citation omitted).

In common fund cases, the Tenth Circuit has "recognized the propriety of awarding attorneys' fees . . . on a percentage of the fund, rather than lodestar, basis."[2] *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993); *accord Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994) (holding that, although either method is permissible in common fund cases, "*Uselton* implies a preference for the percentage of the fund method"). Because this is a common fund case and because plaintiffs' fee request is for a percentage of the common fund, the Court will evaluate the attorney's fees award using the percentage of the fund approach. *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (distinguishing common fund and statutory fees cases).

The "percentage reflected in a common fund award must be reasonable [and] the district court must 'articulate specific reasons for fee awards.'" *Brown*, 838 F.2d at 454 (quoting *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983)). In determining the reasonableness of a percentage award, courts must apply the *Johnson* factors, which are:

---

[2] The lodestar amount is calculated based upon "the total number of hours reasonably expended multiplied by a reasonable hourly rate – and then adjust[ing] the lodestar upward or downward to account for the particularities of the suit and its outcome." *Zinna v. Congrove*, 680 F.3d 1236, 1239, 1242 (10th Cir. 2012) (quotation marks omitted).

9

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee-this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 454-55 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974); *see also Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 455-56 (10th Cir. 1988) ("The court here clearly considered all of the relevant *Johnson* factors and applied them appropriately."). Thus, in evaluating the reasonableness of a fee award, a court need not specifically address each *Johnson* factor. *Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1083 (10th Cir. 1998). The Court finds that the factors relevant in this case weigh in favor of approving the requested fee award.[3]

### A. Time and Labor Required

Class counsel represent that they have spent three years and over 165 hours litigating this case. *See* Docket No. 109-1 at 5, ¶ 13. As part of the litigation, counsel conducted both formal written discovery (including depositions) and informal discovery related to the defendants' financial condition. *See* Docket No. 110 at 2; Docket No. 109-1 at 5-6, ¶ 14. Counsel also drafted multiple motions, consulted with an expert witness, negotiated the settlement, and worked with defendants' counsel to ensure approval of the settlement. *See* Docket No. 109-1 at 5-6, ¶ 14. Given the substantial

---

[3]Class counsel argues that the seventh *Johnson* factor is not relevant in this case. The Court agrees. *See Brown*, 838 F.2d at 455-56 ("[R]arely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation.").

amount of time and labor invested in this case by class counsel, the Court finds that the time and labor factor weighs in favor of plaintiffs' requested fee award.

### B. Novelty and Difficulty of the Questions Presented

Class counsel represents that the case involved two fundamental issues: whether the solids control technicians were entitled to overtime compensation and whether this question could be resolved on a class or collective action basis. *See* Docket 109 at 6. In evaluating the risks of proceeding to trial and in negotiating a settlement, class counsel had to navigate difficult issues related to both the FLSA and Fed. R. Civ. P. 23. *Id.* This factor therefore weighs in favor of the requested award. *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1143, 1150 (D. Colo. 2009) (noting that, although the area of law was not novel, the difficulty and complexity of the issues in the case supported a "generous award of attorney fees").

### C. Skill Required and Experience of Plaintiffs' Counsel

The Court will consider the third and ninth *Johnson* factors together. *See, e.g.*, *id.* (noting that the second, third, and ninth *Johnson* factors are closely related). As evidenced by his declaration, class counsel has extensive experience representing plaintiffs in both wage and hour cases and in class action lawsuits. *See* Docket No. 109-1 at 4-5, ¶¶ 10-11. Accordingly, class counsel was well equipped to address the unique challenges that defendants' financial condition and anticipated defenses posed to plaintiffs' ability to recover in this case. Class counsel successfully negotiated a structured settlement that provides meaningful recovery for the plaintiff class. The "skill" and "experience" factors therefore weigh in favor of the requested fee award.

### D. Preclusion of Other Employment

"Attorneys attempting to handle a large class [in FLSA cases] are precluded by the ticking of the clock from taking certain other cases given that they have decided to take a chance on a possible recovery in a contingent fee case." *Whittington v. Taco Bell of America, Inc.*, No. 10-cv-01884-KMT-MEH, 2013 WL 6022972 at *6 (D. Colo. Nov. 13, 2013). Class counsel represents that he spent significant hours on this case on a contingent fee basis. *See* Docket No. 109 at 7. The Court finds that, while this case does not involve a large class, the handling of this case precluded other work, and therefore the fourth factor weighs in favor of the requested fee award.

### E. The Customary Fee/Awards in Similar Cases

The Court considers factors five and twelve together. Courts in this district have recognized that "[t]he customary fee to class counsel in a common fund settlement is approximately one-third of the economic benefit bestowed on the class." *Anderson v. Merit Energy Co.*, No. 07-cv-00916-LTB-BNB, 2009 WL 3378526, at *3 (D. Colo. Oct. 20, 2009); see also *Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *6 (D. Colo. Apr. 22, 2015) (citing cases holding that fees within the 20-50% range are "presumptively reasonable"); *Brody v. Hellman*, 167 P.3d 192, 203 (Colo. App. 2007) (collecting cases approving percentage fees ranging from 24% to 36% of the common fund). Plaintiffs in this case seek $116,666 in attorney's fees and costs, or between 32% and 33% of the total settlement amount. The Court finds this amount to be in line with the customary fees and awards in similar cases. The fifth and twelfth *Johnson* factors therefore weigh in favor of approval.

### F. Fixed or Contingent Nature of the Fee

While the parties have not presented any evidence of a prearranged fee, class counsel undertook the representation on a contingency basis. Docket No. 109 at 8. Courts have consistently found that this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of the reasonableness of a requested fee award. *See, e.g.*, *Shaw*, 2015 WL 1867861, at *8; *Farley v. Family Dollar Stores, Inc.*, No. 12-cv-00325-RM-MJW, 2014 WL 5488897, at *4 (D. Colo. Oct. 30, 2014).[4]

### G. Amount Involved and the Results Obtained

"[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (internal quotation marks omitted). Here, class counsel recovered $350,000 on behalf of 89 settlement class members. *See* Docket No. 110-1 at 6, ¶ E.1. Further, all affected

---

[4] While courts have consistently interpreted this factor as an inquiry into the fixed or contingent nature of the fee arrangement, the Supreme Court has indicated that "a careful reading of *Johnson* shows that the contingency factor was meant to focus judicial scrutiny solely on the existence of any contract for attorney's fees which may have been executed between the party and [the] attorney." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 723 (1987) (plurality op.), *abrogated in part on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992). However, even if this factor is interpreted as focusing on the specific fee quoted to plaintiffs at the outset of the litigation, the Court finds that the apparent absence of any prearranged fee weighs in favor of the requested award. *See id.* ("The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case." (internal quotation marks omitted)); *Johnson*, 488 F.2d at 718 (indicating that fee amount agreed upon at outset of litigation is a factor to be considered in determining reasonableness of requested fee); *Brody*, 167 P.3d at 200-01 (finding that *Johnson* factors weighed in favor of fee award where "there was no prearranged fee other than an understanding the fee would be contingent on the outcome").

class members will receive compensation.  See Docket No. 109 at 8.  Class counsel obtained this result despite serious questions as to whether the class could be certified under Fed. R. Civ. P. 23 and whether the Motor Carrier Act exemption would be a complete defense to plaintiff's claims.  Id.  Given the risks involved, the Court finds that the relief provided by the settlement represents an excellent result for the settlement class.  See Brown, 838 F.2d at 456 (finding that the results obtained by the settlement "may be given greater weight [in the Johnson analysis] when . . . the trial judge determines that the recovery was highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class"); Tennille v. W. Union Co., No. 09-cv-00938-JLK-KMT, 2014 WL 5394624, at *4 (D. Colo. Oct. 15, 2014) (recognizing that prospective relief contributes to the "real and actual value" of a settlement).  Accordingly, the eighth Johnson factor strongly supports the requested fee award.

### H.  The Undesirability of the Case

Class counsel states that the case could only have been litigated via a contingency fee arrangement "because the class members here are not highly paid employees."  See Docket No. 109 at 10.  Class counsel represents that the case required a significant time commitment, and that counsel's firm incurred $2,070 in costs for "expert witness fees, filing fees, service fees, travel and mileage."  See id.; Docket No. 109-1 at 5, ¶ 13.  The Court agrees that counsel's time spent and out-of-pocket costs was not an insubstantial burden, given the significant risk that plaintiffs would be unable to obtain any recovery from defendants even if they prevailed on the merits.  The relative undesirability of this case therefore weighs in favor of the requested fee

award. *See In re Qwest*, 625 F. Supp. 2d at 1152-53 (finding that risk borne by lead counsel was key factor in assessing desirability of the case).

### I.  Nature and Length of Professional Relationship with the Client

"[A] lawyer may vary his or her fee for similar work in light of the professional relationship of the client with the lawyer." *In re Qwest*, 625 F. Supp. 2d at 1153. Class counsel states that "the unpaid wage claims asserted in this case do not lend themselves to continuous, long-term attorney-client relationships." Docket No. 109 at 10. As there is "no indication that . . . counsel adjusted the agreed fee in this case based on any special relationship with the lead plaintiffs," the Court finds that this factor does not apply in this case. *See In re Qwest*, 625 F. Supp. 2d at 1153.

### J.  Lodestar Crosscheck

Courts evaluating the reasonableness of a percentage fee award will often crosscheck the requested fee with the lodestar amount. *See, e.g.*, *Shaw*, 2015 WL 1867861, at *8; *see also Brody*, 167 P.3d at 201 (noting that, "[t]ypically, courts use the percentage method and then crosscheck the adequacy of the resulting fee by applying the lodestar method"). Class counsel seek $116,666 in attorney's fees and costs for approximately 165 hours spent on the litigation. The requested fee reflects a 1.15 multiplier on counsel's $101,070 lodestar amount.[5]

The Court finds the number of hours expended on this case to be reasonable given that the litigation has been ongoing since 2015 and has involved multiple motions,

---

[5] Using the requested attorney's fee alone – $99,000 – rather than the requested award of attorney's fees and costs, the multiplier is 1.18.

extensive discovery, and settlement negotiations.[6] The hourly rate charged by class counsel of $600 per hour is also generally consistent with the rates charged in other cases in this district. *See Shaw*, 2015 WL 1867861, at *8 (approving of hourly rates ranging from $150 to $675 per hour for attorneys and staff members involved in litigation). Even if the rate is slightly higher than the rates customarily charged in this area, the 1.15 multiplier is lower than the lodestar multipliers that have been approved in other class action cases in this District. *See, e.g.*, *Shaw*, 2015 WL 1867861, at *8 (finding lodestar multiplier of 1.37 to be "significantly lower than lodestar multipliers that Colorado federal courts and other courts consistently have approved in other class action cases"); *Mishkin v. Zynex, Inc.*, No. 09-cv-00780-REB-KLM, 2012 WL 4069295, at *2 (D. Colo. Sep. 14, 2012) (collecting Colorado federal district court cases approving lodestar multipliers ranging from 2.5 to 4.6). Accordingly, the lodestar crosscheck supports the reasonableness of the requested fee.

## IV. COSTS

Class counsel's requested fee award includes $2,070 in out-of-pocket litigation expenses. *See* Docket No. 109-1 at 5; ¶ 13. While it appears that counsel is not seeking separate reimbursement for these litigation expenses, and the Court finds a $116,666 total fee to be reasonable under the percentage method, the Court also concludes that $2,070 in litigation expenses is independently reasonable in the context of this case.

---

[6] Although class counsel has not submitted detailed billing records, the Colorado Court of Appeals has stated that, when "the lodestar method is used as a mere crosscheck of the percentage method, the court does not need to scrutinize exhaustively the hours documented by counsel." *Brody*, 167 P.3d at 204.

"Expenses are compensable in a common fund case if the particular costs are the type typically billed by attorneys to paying clients in the marketplace." *Brody*, 167 P.3d at 205-06 (citing *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cty., Okla.*, 8 F.3d 722, 725-26 (10th Cir. 1993)). Here, the requested costs are for "expert witness fees, filing fees, service fees, travel and mileage." Docket No. 109-1 at 5, ¶ 13. Class counsel avers that these costs are based on contemporaneous expense records. *Id*. The Court concludes that these are the type of costs normally billed to clients. *See In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2014 WL 4670886, at *5 (D. Colo. Sept. 18, 2014) (finding fees for computer research, investigation, and experts/consultants to be "of the type normally billed to clients"). The Court also finds that there have been no objections to counsel's request for costs and that the costs are reasonable given the nature and duration of this lawsuit. *See Shaw*, 2015 WL 1867861, at *8 (awarding $62,388.58 in litigation expenses in wage-and-hour class action lawsuit).

## V. INCENTIVE FEES

The settlement provides for an "enhancement payment" of $7,000 for the class representative, as well as an enhancement of $2,750 for each of four opt-in plaintiffs. Docket No. 110-1 at 6-7, ¶ E.3. "[C]ourts regularly give incentive awards to compensate named plaintiffs for the work they performed – their time and effort invested in the case." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017). "The award should be proportional to the contribution of the plaintiff." *Id.* No member of the settlement class has objected to the

payments, which were disclosed in both the settlement agreement and the notice sent to class members. *See* Docket No. 110-1 at 6-7, ¶ E.3*;* Docket No. 110-3 at 3. Based on the information provided by class counsel and the fact that this case has been pending for almost three years, the Court concludes that the enhancement payments are reasonable compensation for the named plaintiff and opt-in plaintiffs' participation in the lawsuit. *See Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016) (finding that $7,500 service award was "appropriate and . . . commensurate with awards in similar cases"); *Wornicki v. Brokerpriceopinion.com*, No. 13-cv-03258-PAB-KMT, Docket No. 170 at 21-22 (D. Colo. Sept. 20, 2018) (finding a $5,000 incentive award to be "reasonable compensation" to the class representatives).

## VI. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Joint Motion for Final Approval of Settlement Agreement [Docket No. 110] is **GRANTED**. It is further

**ORDERED** that plaintiff's Unopposed Motion for Approval of Attorney's Fees and Costs [Docket No. 109] is **GRANTED**.

The Court will issue a separate order setting forth the terms of the judgment.

DATED December 18, 2018.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge